1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  DEBORAH R. DOUGLAS (NYBN 2099372)
   Assistant United States Attorney
5
       1301 Clay Street, Suite 340S
6      Oakland, CA 94612
       Telephone: (510) 637-3680
7      Facsimile: (510) 637-3724
       E-Mail Address: deborah.r.douglas@usdoj.gov
8
   Attorneys for Plaintiff
9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                          OAKLAND DIVISION
12

13 | UNITED STATES OF AMERICA,           ) No.: CR07-00530 WDB
                                         )
14 |         Plaintiff,                  )
                                         ) UNITED STATES' SENTENCING
15 |    v.                               ) MEMORANDUM
                                         )
16 | FRANCISCO A. UBALDO,                ) Sentencing Proceeding: March 12, 2008 at
                                         ) 10 a.m.
17 |         Defendant.                  )
                                         )
18 |_____

19 | I.  **BACKGROUND**

20         On August 9, 2007, defendant was indicted of two felony counts of assaulting Officer Gordon

21  Williamson and Officer Eric Presser, federal officers with the U.S. Department of Veteran Affairs,

22  in violation of Title 18, United States Code, Section 111(a)(1). On November 30, 2007, defendant

23  entered a guilty plea to a one-count misdemeanor information pursuant to the parties' agreement.

24  The applicable guideline range is 12 to 18 months in prison, with a statutory maximum of 12

25  months, and defendant has agreed not to move for a downward departure as part of the *quid pro quo*

26  process of negotiating a plea agreement.

27         In the Pre-Sentence Report, the Probation Officer disregards the parties' agreement and

28  recommends five-years probation with 12 months of home confinement and electronic monitoring,
    and a $3,000 fine (or 300 hours of community service).

For the reasons stated below, the United States respectfully submit that the 12-month prison term is appropriate and reasonable – and consistent with the factors set forth in 18 U.S.C. § 3553.

## II. ARGUMENT

The factors set forth in 18 U.S.C. § 3553 include, but are not limited to, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; the need for adequate deterrence to criminal conduct; and the need to protect the public.

All of the relevant factors were considered by the parties in reaching a resolution of this case. But for this resolution, the government would have pursued the two felony counts charged in the indictment, which are not grouped under the guidelines. If convicted of both felonies after trial, defendant would be facing 24 to 30 months in prison and his felony convictions would follow him for the rest of his life. Instead, the parties reached a *quid pro quo* resolution involving pros and cons to both parties. Pursuant to the plea agreement, defendant pled guilty to one misdemeanor and agreed not to move for a downward departure from the applicable 12 to 18-month guideline range. Based upon the misdemeanor disposition of this case, defendant cannot be sentenced above the statutory maximum prison term of 12 months. Considering all of the relevant factors, the parties agreed that this sentence is appropriate and reasonable.

In disregarding the parties' agreement, the Probation Officer seeks to supplant her judgment for that of the defense counsel and the prosecutor. Indeed, the Probation Officer, while professing not to condone the defendant's behavior, expresses her personal opinion that "it is understandable to the undersigned that it might be frustrating to have an exit blocked during a fire drill. It appears counterintuitive to the undersigned that a gate would come down and impede exiting during a fire drill" (PSR Sentencing Recommendation, pp. 1-2). The Probation Officer's personal view of the U.S. Department of Veterans Affairs' written fire drill policy and procedures is irrelevant and inappropriate.

Defendant's actions of assaulting two federal officers are serious offenses which should be given due respect and not minimized, especially since these officers place their safety at risk to

protect the rest of us who are not tasked with those responsibilities. In attempting to perform his official duties, it was Officer Williamson who was knocked unconscious and it was his pool of blood that ended up on the garage floor. Officer Presser sustained abrasions and scratches on both his forearms and left hand which has resulted in a permanent scar. Officer Presser stated that his injury involved blunt force trauma and he is concerned about the potential for developing arthritis in that area. Whether defendant did or did not intend to injure the officers is irrelevant because assaulting a federal officer is a general intent crime – and the "the law will presume that a person intended the natural and probable consequences of his voluntary acts.". United States v. Loera, 923 F.2d 725, 728 (9th Cir. 1991); United States v. Garcia-Camacho, 122 F.3d 1265, 1268 (9th Cir. 1997).

Defendant was given a number of opportunities to comply with Officer Williamson's and Officer Presser's efforts to perform their official duties but, instead, chose to engage in conduct that has consequences not only to his victims, but to him. Defendant does not dispute that he should face the consequences of his actions and adhere to the negotiated terms of his plea agreement. In paragraph 2 of the plea agreement, defendant admitted as follows:

> On March 28, 2007, I intentionally and forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with Officer Gordon Williamson and Officer Eric Presser, both of whom are federal officers of the U.S. Department of Veterans Affairs ("VA"), while they were engaged in and on account of the performance of their official duties at the Veteran Affairs Outpatient Clinic in Oakland, Northern District of California. Officer Williamson and Officer Presser were both in full police uniform and on duty at the Outpatient Clinic.
>
> While I was in the garage on the first floor of the Outpatient Clinic, the fire alarm was activated for a fire drill. I agree that the VA's written "Emergency Preparedness Plan" dated April 1, 2000 states, in relevant part, "Security will bring the parking lot gate half down to prevent any vehicles from entering or exiting the garage. Security will be responsible for crowd control, ensuring that front entrance and parking lot areas are clear, and that all staff and patients are directed to the safe area."
>
> Pursuant to proper procedures, Officer Williamson directed me to get back into my vehicle, which was parked inside the VA Clinic's garage. Officer Williamson informed me that I would be let out of the garage in a couple of minutes. I refused to comply and became more irate and demanding towards Officer Williamson. I walked towards Officer Williamson and made aggressive motions with my arms. I yelled at Officer Williamson to open the garage gate. Officer Williamson again directed me to return to my vehicle and reiterated that I would be let out of the garage in a couple of minutes.

I refused to comply, stating "Open up the gate; you are taking my time." Officer Presser instructed me to return to my vehicle or I would be arrested for failure to obey the directions of a police officer. When I continued to refuse, Officer Presser told me that I was under arrest for failure to obey a police officer.

Officer Presser grabbed my left wrist, placed it behind my back and began placing handcuffs on me. When I attempted to pull away from Officer Presser, Officer Williamson grabbed my right arm. I struggled and attempted to get my arms free. Officer Williamson and Officer Presser forced me towards the wall next to the clinic entrance. During the course of the struggle, I hit Officer Williamson in the face with the handcuffs and struck his forehead. I then elbowed Officer Williamson on the left side of his head. I continued to struggle with Officers Williamson and Presser, both of whom sustained bodily injury, as defined in Application Note 1(B), U.S.S.G. § 1B1.1.

I agree that the government could prove that, as the result of my conduct above, Officer Williamson was rendered unconscious for a short period of time. I agree that the government could also prove that I caused the cut in the center of Officer Williamson's forehead and that Officer Williamson was bleeding profusely from the wound on his left cheek, resulting in a large pool of blood on the ground along side Officer Williamson's head. Officer Williamson's emergency medical records confirm that he sustained two wounds to his face and there was significant bleeding from the cheek laceration. The laceration on Officer William's left cheek was one centimeter in size with localized swelling, approximately 3 to 5 millimeters in depth.

In addition to Officer Williamson's injuries, Officer Presser's medical records confirm that, as the result of this incident, Officer Presser sustained abrasions and scratches on both his forearms and left hand. I agree that the government could prove that Officer Presser has a permanent scar on his left hand.

Defendant's assault on two federal officers is not the first time that defendant has been arrested for assaultive behavior. As set forth in paragraph 30 of the Pre-Sentence Report, on January 3, 1988, defendant was arrested by the Oakland Police Department for Battery as follows:

According to the arrest report, the victim, the defendant's girlfriend, went to Ubaldo's residence to retrieve her belongings, and was told at the door by Ubaldo that she was not getting her things that day. Subsequently, Ubaldo pushed the victim out of the doorway. When the victim indicated she would call the police, Ubaldo allowed her into the apartment and began calling her names. The victim called the defendant names in return and Ubaldo allegedly struck her on the left side of her face with his fist. According to the victim, she fought back to protect herself, and Ubaldo "body slammed" her and struck her in the chest with his fist. A visitor at the home pulled the defendant off of the victim, and Ubaldo started throwing the victim's belongings into the hallway. Officers were called to the scene, and

4

the defendant was arrested without further incident. The defendant denies striking the alleged victim in this matter.

Further, there is an issue involving defendant's credibility. Although defendant reported to the Probation Officer that he earned between *$5,000 and $8,000 per month* as a branch manager for the Hilltop Lending Corporation from 2004 to 2007, Officer Presser discovered that defendant had claimed in a signed written document submitted to the VA clinic in April 2007 that he only earned a gross *annual* income of *$3,000* in 2006. Officer Presser further stated that, based upon defendant's claimed income, defendant obtained benefits from the VA Clinic in the form of elimination of fees for medications and co-payments. Officer Presser has referred this matter to the VA Clinic's business office (PSR ¶ 44).[1]

In addition, defendant is an admitted marijuana user who claimed that he stopped smoking "medical" marijuana after "he was informed that it was not allowed during his U.S. Pretrial Services release" (PSR ¶ 40). Defendant tested positive for marijuana on October 9, 2007 and November 14, 2007 (more than six weeks after his arrest on September 28, 2007 and initial appearance on October 1, 2007). Defendant claims that "these positive tests for marijuana were not a result of active use, but reflected residual THC levels from his medical use of marijuana prior to his arrest" (PSR ¶ 4). An Oakland Pre-Trial Services Officer, who routinely deals with this issue, has informed the undersigned Assistant United States Attorney that there is normally no marijuana residual left in the body within two to three weeks after use – and within 30 days after heavy use of marijuana by a large

---

[1] In the "Sentencing Recommendation" attachment to the PSR, the Probation Officer states for the first time: "Notably, since this offense occurred, Ubaldo has returned to the VA Hospital on numerous occasions (as he had prior to the instant offense) without incident (including interacting with the victims in this case)"(p. 2, ¶ 1). The government was not provided with the opportunity to object to this comment because it did not appear in the draft pre-sentence report, as it should have been. The Probation Officer's statement should be amended to accurately reflect the facts. Based upon Officer Presser's check of data on the VA's computer system, defendant has been to the VA Clinic on only three occasions since his assault on two federal officers on March 28, 2008, i.e., on June 19, 2007 (pre-indictment), September 28, 2008 (the date of defendant's arrest), and November 19, 2007 (11 days before defendant's guilty plea on 11/30/07). As the result of defendant's assaultive conduct on March 28, 2007, the VA has classified defendant as having "restricted access" to its facilities, meaning that defendant has to check in with security personnel upon his arrival on the premises. This checking-in process is the extent of defendant's "interacting with the victims in this case."

5

individual is the outside limit (and is considered a stretch). Defendant tested positive for marijuana over six weeks after his arrest.

In sum, the United States respectfully submits that a 12-month prison term is reasonable and appropriate – and consistent with the factors set forth in 18 U.S.C. § 3553, including promoting respect for the law and for federal law enforcement officers who place their safety at risk to protect the rest of us who are not tasked with those responsibilities.

## CONCLUSION

For the reasons set forth above, the United States respectfully submit that a 12-month prison term is both appropriate and reasonable.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

3/5/08
Dated

DEBORAH R. DOUGLAS
Assistant United States Attorney