BARRY J. PORTMAN
Federal Public Defender
JEROME E. MATTHEWS
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant FRANCISCO UBALDO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                    )<br>            Plaintiff,      )<br>                    )<br>vs.                 )<br>                    )<br>FRANCISCO UBALDO,         )<br>                    )<br>            Defendant.    )<br>_____) | No. CR-07 00530 CW[WDB]<br><br>FRANCISCO UBALDO'S SENTENCING MEMORANDUM |

**1. Preliminary Statement**

Francisco Ubaldo indicated early in this case that he wished to accept responsibility for his conduct, and he pleaded guilty to a single count of misdemeanor assault on a federal officer in violation of 18 U.S.C. §111(a)(1) within sixty days of his initial appearance.

Mr. Ubaldo stands ready to accept whatever punishment this Court determines is appropriate. He submits this brief memorandum to place his conduct in context.[1]

**2. Factual Background**

Mr. Ubaldo served seven years active duty in the armed forces. He joined the Navy in

---

[1] Letters attesting to Mr. Ubaldo's character are collectively attached as Exhibit A.

SEN MEMO                                             1

1978 in Jacksonville, Florida and completed a three-year tour of duty. In 1981, he was transferred to Alameda Naval Air Station and completed a four-year tour of duty. After leaving active duty, Mr. Ubaldo spent an additional five years in the reserves. He received three honorable discharges, two from active duty and one from the reserves.

His military training instilled a strong sense of duty and service, and Mr. Ubaldo has always tried to live up to these ideals. Following his discharge, he considered becoming a police officer with the City of Oakland. During the interim, he was employed by the County of Alameda as a protective services officer at the Oakland Coliseum.

Since that time, Mr. Ubaldo has worked assiduously to create a better life for himself. He obtained his real estate license in 2006, and, although he is subject to swings in the real estate market, is positioned to make a decent income when home sales rebound from their current depression.

He also has tried to make a better life for others. Two years ago, Mr. Ubaldo learned that Jovan Ubaldo, now seventeen years old, is not his biological son. For the preceding fifteen years, Mr. Ubaldo had provided financial and emotional support to Jovan. Although learning that Mr. Ubaldo is not his true father has caused trouble for Jovan, Mr. Ubaldo remains active in his life and does his best to minimize the difficult environment which Jovan's mother – broke, drug-dependent and emotionally unstable – has created.

The foregoing summary of Mr. Ubaldo's background, together with the probation officer's insights, should provide the Court with sufficient information to craft an appropriate sentence.

## 3. Sentencing Recommendation

*United States v. Booker*, 543 U.S. 220 (2005), directs the sentencing court to impose an appropriate sentence, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. Under the post-*Booker* discretionary sentencing regime, there is no longer any question that the advisory Guideline range is only one factor among several that

this Court is required to consider in determining what constitutes a reasonable sentence. The Court is free to disagree with Guideline ranges and policy considerations. *See Kimbrough v. United States*, 128 S.Ct. 558, 57 (2007). While circuit courts of appeal may apply a presumption of reasonableness to sentences within the applicable Guidelines range, *Rita v. United States*, 127 S.Ct. 2456 (2007), the district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id.* at 2465. Nor is it required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *Gall v. United States*, 128 S.Ct. 586, 596 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 127 S.Ct. at 2469.

In sum, "th[e] mandatory system [embodied in § 3553(b)] is no longer an open choice." *Booker*, 543 U.S. at 263. Instead, the district court's duty is to impose the least amount of time necessary to achieve § 3553(a)'s purposes. The Guidelines range is subordinate to that duty.

**4. Conclusion**

It is ironic and, more importantly, unfortunate, that the present case arises from an incident involving persons who have at different times in their lives dedicated themselves to serving the United States. Mr. Ubaldo wishes to make clear to all – and especially to Officers Williamson and Presser – that he is ashamed of himself. As one who has undergone law enforcement training, Mr. Ubaldo understands that he should have followed the officers' orders despite the urgency of his appointment and his confusion regarding why he was being confined to the premises during a fire drill.

Mr. Ubaldo will abide the terms of his plea agreement and leave it to the probation officer and the government to urge their respective views on an appropriate sentence.

1 | Dated: March 5, 2008

2 |                                         Respectfully submitted,

3 |                                         BARRY J. PORTMAN
                                            Federal Public Defender
4 |
                                                    /S/
5 |
                                            JEROME E. MATTHEWS
6 |                                         Assistant Federal Public Defender

7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |

SEN MEMO                                        4